UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>TRI-CITY COMMUNITY ACTION<br>PROGRAM, INC.<br><br>  Debtor. | Chapter 11<br>Case No. 15-11569-JNF |

**ORDER CONFIRMING DEBTOR'S LIQUIDATING PLAN**
**(Regarding Debtor's Sale of Property at 22 Charles Street and**
**115 Washington Street, Malden, MA)**

Pursuant to the Debtor's Plan of Reorganization dated April 14, 2017 (the "Plan") proposed by Tri-City Community Action Program, Inc. (the "Debtor"), the Debtor has proposed to sell to Metro North Housing Corp. (the "Buyer") the real estate known and numbered as 22 Charles Street, Malden, Massachusetts (the "Charles Street Property") and 115 Washington Street, Malden, Massachusetts (the "Washington Street Property" and, together with the Charles Street Property, the "Property"), in accordance with that certain Amended and Restated Purchase and Sale Agreement dated March 31, 2017 and appended to the Plan as <u>Exhibit D</u> (the "Agreement"); this Court having held its hearing to consider confirmation of the Plan on July 10, 2017 (the "Confirmation Hearing"); notice of the Plan and the Confirmation having been found to have been sufficient by this Court; and no objections to confirmation of the Plan having been filed by the deadline fixed by the Court; the Court having heard and considered the arguments of counsel in support of the confirmation of the Plan and all testimony presented and offered and evidence admitted at the Confirmation Hearing; this Court having entered

its Order Confirming Debtor's Liquidating Plan on the date hereof (the "Confirmation Order"); and good cause appearing therefor;

It is hereby ORDERED, ADJUDGED AND DECREED that:

1. The Agreement, and the sale of the Property to Metro North Housing Corp. ("Buyer"), free and clear of liens, claims and encumbrances of the Bankruptcy Code, excepting those mortgage obligations assumed by the Buyer under the Agreement as more particularly described on <u>Schedule A</u> attached hereto, are hereby approved pursuant to pursuant to Sections 363 and 1141(c) of the Bankruptcy Code. The Debtor is authorized to consummate the transactions contemplated by the Agreement, subject to the terms and conditions of the Agreement.

2. In accordance with the Agreement, the sale of the Property is "as is, where is" and otherwise in accordance with the terms and conditions of the Agreement. Accordingly, except to the extent expressly provided otherwise by the Agreement, the Buyer is deemed to have waived, and is hereby barred from asserting against the Debtor or the estate, any claim arising out of or with respect to the condition of the Property or the use of the Property prior to the conveyance thereof to the Buyer.

3. The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance of the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material and does not change the economic substance of the transactions contemplated thereby.

4. Pursuant to Section 363(f) of the Bankruptcy Code, the sale of the Property pursuant to the Agreement is and shall be, except to the extent otherwise provided in

the Agreement or the Plan, free and clear of (i) all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, restrictions or charges of any kind or nature (collectively, "Liens"), and (ii) all debts, liabilities, objections, commitments, responsibilities, claims (as that term is defined in the Bankruptcy Code) including, but not limited to, all product liability claims, claims arising under contracts, licenses, or other agreements, counterclaims, defenses and offsets of any kind or nature, arising prior to the closing under the Agreement (the "Closing") or relating in any way to any acts of the Debtor prior to the Closing, however arising (collectively, "Claims"). Pursuant to the Plan, all Priority Tax Claims (as defined in the Plan) affecting the Property and all other liens or claims of any governmental unit shall be paid by the Debtor on or before the date of the Closing, and any such Priority Tax Claim and liens or claims of any governmental unit incurred by the Debtor or accruing up to and including the Closing, to the extent remaining after the Closing, shall be unconditionally released, discharged and terminated.

5. This Order is deemed to operate as an unconditional release, discharge and termination of all Liens or Claims on the Property as of the Closing, including, without limitation, any Priority Tax Claims and liens or claims of any governmental unit incurred by the Debtor or accruing up to and including the Closing, to the extent remaining after the Closing, and except as provided in the Agreement. If the Buyer fails to close under the Agreement for any reason, then the Liens or Claims on or with respect to the Property shall continue against such Property unaffected by this Order. All holders of recorded Liens or Claims on the Property are hereby directed to cooperate with the Debtor and the Buyer with respect to any request by the Debtor or the Buyer for

execution of releases or partial releases of Liens and Claims on the Property incident to the Closing under the Agreement, provided that the reasonable cost of preparing and filing any such releases or partial releases shall be borne by the Debtor and/or the Buyer.

6.  This Order is binding on filing agents and officers, all government departments and units, whether federal, state, local or of a foreign state (or subdivision thereof), who may be required by operation of law, or the duties of office or of contract, to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title or state of title in or to the Property (all such entities being "Recording Officers"); provided, however, that, in accordance with Section 1146(a) of the Bankruptcy Code, all such Recording Officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, all deeds, bills of sale, mortgages, leasehold mortgages, deeds of trust, leasehold deeds of trust, memoranda of lease, notices of lease, assignments, leasehold assignments, security agreements, financing statements, and other instruments of absolute or collateral transfer without payment of any stamp tax, or similar tax imposed by federal, state, or local law; and provided further that nothing in this Order shall require Recording Officers to accept for filing any transfer document or instrument not accompanied by payment of any required recording fee. Each and every federal, state and local governmental agency or department is hereby required and directed (i) to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement, and (ii) to issue any certificate, including without limitation a

## Schedule A to the
## Order Confirming Debtor's Liquidating Plan
## (Regarding Debtor's Sale of Property at 22 Charles Street and
## 115 Washington Street, Malden, MA)

The following agreements and instruments regarding the property at **22 Charles Street, Malden, Massachusetts** between the Debtor and, respectively:

(i) Community Economic Development Assistance Corporation ("**CEDAC**") for itself and as agent for the Massachusetts Department of Housing and Community Development ("**DHCD**"), regarding obligations in the original principal amount of $500,000, as evidenced by a certain Housing Innovations Fund III ("**HIF**") Land Use Restriction dated September 25, 2002 and recorded with the Middlesex South Registry of Deeds (the "**Registry**") on October 2, 2002 at Book 36589, Page 617; a Mortgage, Security Agreement and Assignment of Leases and Rents dated September 25, 2002 and recorded with the Registry on October 2, 2002 at Book 36590, Page 001; a UCC-1 Financing Statement recorded with the Registry at Book 36590, Page 019; all as affected by that certain Subordination Agreement dated September 25, 2002 (the "**Subordination Agreement**") and recorded with the Registry on October 2, 2002 at Book 36590, Page 70;

(ii) Malden Redevelopment Authority, as Representative Member and Agent for the North Suburban Consortium ("**MRA**") regarding obligations in the original principal amount of $300,000, as evidenced by a HOME Investment Partnership Program ("**HOME**") Affordable Housing Restriction dated September 9, 2002 and recorded with the Registry on August 23, 2004 at Book 43569, Page 47; a Mortgage dated September 9, 2002 and recorded with the Registry on August 23, 2004 at Book 43569, Page 060; all as affected by the Subordination Agreement; and

(iii) CEDAC as agent for itself and DHCD, regarding obligations in the original principal amount of $104,716, as evidenced by the Facilities Consolidation Fund ("**FCF**") Land Use Restriction Agreement dated September 25, 2002 and recorded with the Registry on October 2, 2002 at Book 36590, Page 024; the FCF Mortgage and Security Agreement dated September 25, 2002 and recorded with the Registry on October 2, 2002 at Book 36590, Page 035; the FCF Collateral Assignment of Leases and Rents dated October 2, 2002 and recorded with the Middlesex South Registry of Deeds at Book 36590, Page 055; a UCC-1 Financing Statement recorded with the Middlesex South Registry of Deeds at Book 36590, Page 065; all as affected by the Subordination Agreement.

The following agreements and instruments regarding the property at **115 Washington Street, Malden, Massachusetts** between the Debtor and, respectively:

(i) U.S. Department of Housing and Urban Development ("**HUD**"), regarding obligations in the original principal amount of $348,330, evidenced by a Declaration of Restrictive Covenants dated as of April 26, 2007 and recorded with the Registry on April 27, 2007 at Book 49352, Page 176 (the "**Washington Street HUD Loan Document**"); and

(ii) MRA, regarding obligations in the original principal amount of $500,000, evidenced by a Mortgage and Security Agreement and Assignment of Leases and Rents dated April 26, 2007 and recorded with the Registry on April 27, 2007 at Book 49352, Page 221; a HOME Affordable Housing Restriction dated April 26, 2007 and recorded with the Registry on April 27, 2007 at Book 49352, Page 310; an Affordable Housing Restriction dated May 27, 2008 and recorded with the Registry on June 6, 2008 at Book 51275, Page 461 (the "**Washington Street AHR**"), all as affected by a Master Subordination Agreement dated May 27, 2008 and recorded with the Registry on June 6, 2008 at Book 51275, Page 501 (the "**Washington Street Subordination Agreement**");

(iii) CEDAC, as agent for itself regarding obligations in the original principal amount of $750,000, as evidenced by a Mortgage, Security Agreement and Conditional Assignment of Leases and Rents dated May 27, 2008, and recorded with the Registry on August 6, 2008 at Book 51275, Page 487 (the "**Washington Street CEDAC Mortgage**"); and the Washington Street AHR, all as affected by the Washington Street Subordination Agreement; and

(iv) CEDAC, as agent for itself and the Massachusetts Housing Partnership Fund regarding obligations in the original principal amount of $697,056, **as evidenced by** the Washington Street CEDAC Mortgage, and the Washington Street AHR, all as affected by the Washington Street Subordination Agreement.